NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1308

DARRYRL C. CARROLL, SR.

VERSUS

SELECT MOTOR COMPANY, INC.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 230,598
HONORABLE HARRY F. RANDOW, PRESIDING
\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, James T. Genovese, and David E. Chatelain[*], Judges.

**AFFIRMED AND RENDERED.**

**Thomas D. Davenport, Jr.**
**Allen A. Krake**
**The Davenport Firm, APLC**
**1628 Metro Drive**
**Alexandria, LA 71301**
**(318) 445-9696**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Darryrl C. Carroll, Sr.**

_____

[*] Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Eugene A. Ledet, Jr.**
**Dalrymple & Ledet, LLC**
**P.O. Box 14440**
**Alexandria, LA 71315**
**(318) 442-1818**
**COUNSEL FOR DEFENDANT/APPELLEE:**
        **Select Motor Company, Inc.**

**COOKS, Judge.**

This suit arises out of a dispute over the restoration of an antique pick-up truck. In July of 2004, Darryrl Carroll, the owner of a 1954 GMC pick-up truck, engaged Select Motor Company, Inc. to restore his truck. Mr. Carroll alleged he told Rance Brown, a mechanic at Select, that he wanted to spend between $8,000.00 and $10,000.00 in restoring the vehicle. According to Mr. Carroll, Mr. Brown responded they could "work with that." Select denies giving any estimate, stating, as a practice, it does not give estimates because the amount of work required is too difficult to determine until a vehicle is taken apart and the condition more accurately assessed. No testimony from Mr. Brown is found in the record.

Mr. Carroll signed an authorization form, which allowed Select to charge his credit card for work or parts needed for restoration of the vehicle. An escrow account in the amount of $5,000.00 was also established. Correspondence between Select and Mr. Carroll was generally accomplished by e-mail. This was done in large part because Mr. Carroll was a production and exploration specialist employed by Royal Dutch Shell, and was out of the country frequently for long periods of time.

Beginning in August of 2004, Select purchased parts, performed work on the vehicle, periodically charged Mr. Carroll's credit card, and sent him invoices. However, in January of 2005, Mr. Carroll was e-mailed and informed a charge on his credit card had been refused. Subsequently, Mr. Carroll wired funds or occasionally sent checks to pay outstanding balances on his account.

On April 26, 2007, Select's bookkeeper, Diane Francis, e-mailed Mr. Carroll informing him his escrow account had been charged and he had a remaining balance of $2,936.54. Select continued performing work and, on May 8, 2007, again e-mailed Mr. Carroll informing him his escrow account had run out and he had an outstanding

balance of $558.28. Two days later, on May 10, 2007, Mr. Carroll sent a check for $5,000.00 to pay his outstanding balance and replenish his escrow account.

At this point in May of 2007, Mr. Carroll was current with Select and had a positive balance in his escrow account. However, after a series of invoices went unpaid, by June 15, 2007, Select informed Mr. Carroll he had an outstanding balance of $10,518.69. A week later, on June 22, 2007, Genny Potette, a part-owner of Select, e-mailed Mr. Carroll to inform him it would no longer work on his truck until he paid down his balance. Mr. Carroll sent an e-mail to Select requesting an accounting of how much money he had spent on the vehicle to date. Ms. Francis sent Mr. Carroll that information on July 5, 2007.

On August 20, 2007, Select again sent a statement to Mr. Carroll delineating the charges and requesting payment. On August 28, 2007, Select sent a letter by both e-mail and regular mail to Mr. Carroll requesting payment and informing him if payment was not received within ten days it would begin charging him $17.00 per day in storage fees. Select received an e-mail from Mr. Carroll the next day, informing it his mother was in ICU, and he would work on this in a few days.

On October 9, 2007, Mr. Carroll sent an e-mail to Ms. Francis expressing concerns over the billing on the vehicle. Ms. Francis responded to the e-mail and, after setting forth the invoices for work done, informed Mr. Carroll his balance was now $11,019.22, which included accrued storage fees. No payment was ever made by Mr. Carroll and the vehicle remained in storage.

On February 15, 2008, Mr. Carroll filed a petition for declaratory judgment and injunctive relief, claiming that Select made "material misrepresentations and suppressions of truth" regarding the restoration work on the truck. Mr. Carroll also filed a petition to recover movable property and a writ of sequestration. The

sequestration order was signed on February 15, 2008. Select filed an answer to the petition for declaratory judgment and injunctive relief, and a reconventional demand for an outstanding balance Select claimed was owed by Mr. Carroll.

Accompanying Select's answer were interrogatories and discovery requests. There was no response to the discovery requests. Select filed a motion to compel, which was set for hearing on January 26, 2009. During the hearing, the judge was notified the parties had reached an agreement. Mr. Carroll was given twenty-one days, or until February 18, 2009 to respond to discovery, and agreed his failure to do so would result in a dismissal of his claims. Mr. Carroll did not respond.

Select then filed a motion to dismiss on February 26, 2009. Counsel for Mr. Carroll appeared and filed a motion to withdraw, even though the matter was set for trial on April 1, 2009. The court denied the motion, at which time counsel for Mr. Carroll informed the court of his intent to file an emergency writ. The court then continued the hearing on the motion to dismiss until April 1, 2009, the date of the trial on the merits.

The day prior to trial beginning, a motion to continue was filed by Mr. Carroll, claiming he was on an oil rig in the South China Sea with limited communication. The court again accommodated Mr. Carroll and rescheduled the trial to commemce on April 28, 2009. Mr. Carroll was also ordered to respond to discovery by April 17, 2009.

When the parties appeared for trial on April 28, 2009, the trial court inquired as to compliance with the discovery order and was informed no discovery responses were sent. Counsel for Mr. Carroll explained his client did not return from overseas until April 15, 2009, and "the first thing he did rather than see his lawyer was see his children and his elderly mother who was in a hospital." After both counsel were

allowed to argue, the trial court dismissed Mr. Carroll's claims against Select, for the following reasons:

> All right. I'm compelled to agree with [counsel for Select]. I'm going to dismiss Mr. Carroll's claim against Select Motors. Dismiss it without prejudice and, I do that because I feel like to do otherwise would be an injustice to Select Motors.
>
> They have been here every time that the Court has been convened. To the best of my knowledge, they have responded to discovery and have done everything that they can to bring this matter to some resolution. And while I understand that Mr. Carroll works in parts of the world where communication is an issue, I don't believe for a minute that he is without communication totally.
>
> And he has a responsibility to communicate with this attorney, he had a responsibility to the law to respond to this discovery. And it just would be unfair to Select to now be presented with discovery at this time.
>
> So for that reason the Court grants the motion to dismiss, and dismisses his claim without prejudice.

After granting the dismissal, trial began on the reconventional demand filed by Select. Following the presentation of evidence, the trial court found in favor of Select and awarded it $10,518.89 on the open account claim. The court took under advisement the issues of storage, attorney fees, and whether the sequestration was improvidently issued. Oral reasons were rendered on May 26, 2009, awarding Select $1,000.00 in damages and $500.00 in attorney fees as a result of the improvidently issued writ of sequestration. The court further awarded attorney fees in the amount of $1,250.00 for the prosecution and collection of the open account as provided by La.R.S. 9:2781.

Mr. Carroll has appealed, arguing the trial court erred in dismissing his suit and in not allowing him leave to amend his answer to include affirmative defenses. Select has answered the appeal, requesting additional attorney fees necessitated by defending this appeal. Select also requests damages and attorney fees, contending Mr. Carroll's appeal is frivolous.

-4-

**ANALYSIS**

## I.   *Mr. Carroll's Appeal.*

Mr. Carroll argues on appeal the trial court erred in dismissing his suit and in not allowing him leave to amend his answer to include affirmative defenses. Louisiana Code of Civil Procedure article 1471 sets forth the sanctions available against a party for failing to comply with discovery orders.  This article provides in pertinent part:

> A. If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> (3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

The trial court has much discretion in selecting the appropriate sanctions for failure to comply with discovery orders, and a judgment granting a sanction will not be disturbed on appeal absent a clear showing of abuse of discretion.  *Hutchinson v. Westport Ins. Corp.*, 04-1592 (La. 11/8/04), 886 So.2d 438; *Coleman v. Asplundh Tree Expert Co.*, 01-1297 (La.App. 5 Cir. 3/26/02), 815 So.2d 268.

Louisiana Code of Civil Procedure article 1005 provides "[t]he answer *shall* set forth any matter constituting an affirmative defense."  (Emphasis added.)  The decision whether to grant a defendant leave to amend an answer is within the sound discretion of the trial court, and its ruling will not be disturbed on appeal except where an abuse of discretion has occurred and indicates a possibility of resulting injustice.  *Hogan v. State Farm Auto Ins. Co.*, 94-4 (La.App. 1 Cir. 12/22/94), 649 So.2d 45, *writ denied*, 95-215 (La. 3/17/95), 651 So.2d 276.

-5-

Counsel for Mr. Carroll repeatedly references his client's communication difficulties due to his frequent trips overseas as justification for his failure to both comply with discovery and assert his affirmative defenses in his answer. While we accept Mr. Carroll's representation that it was difficult to communicate, his attorney was located in Louisiana. It is hard to believe with all the telecommunication advances across the globe, Mr. Carroll and his counsel were so hampered that they could not make any efforts to move his case along. His counsel also could have obtained experts and deposed witnesses to prove Mr. Carroll's belief that he was overcharged by Select. The trial court, in our view, gave significant latitude to Mr. Carroll and his attorneys in pursuing his claim. Mr. Carroll was originally compelled to respond to discovery by February 18, 2009. That date was extended to March 27, 2009, then April 1, 2009, and finally to April 17, 2009. Further, when the parties appeared in court on April 28, 2009 (which itself was a continued date at the request of Mr. Carroll), counsel for Mr. Carroll acknowledged discovery responses still were not complete. We find no abuse of discretion in the trial court's dismissal of Mr. Carroll's claims and its refusal to grant leave to amend the answer after trial was set and continued.

## II.   Select's Answer to the Appeal.

Select answered Mr. Carroll's appeal seeking additional attorney fees for work necessitated by this appeal. After a review of the record and the work done on appeal by counsel for Select, we find an additional award of $500.00 in attorney fees is reasonable. We, therefore, will award Select an additional $500.00 in attorney fees for successfully defending this appeal.

Select, in its answer, also requested damages and attorney fees for a frivolous appeal. An appeal is not automatically deemed frivolous simply because it lacks

merit. Louisiana Code of Civil Procedure article 2164 is penal in nature and must be strictly construed. It provides that an appellate court may award damages for frivolous appeal when there is no serious legal question, when the appeal is taken solely for the purpose of delay, or when it is evident that appellant's counsel does not seriously believe in the position he advocates. *Gallien v. Winn-Dixie*, 96-832 (La.App. 3 Cir. 12/11/96), 685 So.2d 531. We do not find that the present matter meets the requirements of a frivolous appeal, and, therefore, we decline to award damages and attorney fees.

### DECREE

For the above reasons, we amend the trial court judgment to reflect an additional award of $500.00 in attorney fees in favor of Select for the work necessitated by this appeal. In all other respects, the judgment is affirmed. Costs of this appeal are assessed against appellant, Darryrl Carroll.

**AFFIRMED AND RENDERED.**